# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| JACOREY ONEAL RIVERS, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV415-194 |
| | ) | CR414-099 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

After pleading guilty to being a felon in possession of a firearm, Jacorey Rivers moves under 28 U.S.C. § 2255 to vacate his conviction. Doc. 19. Review of the parties' briefing shows his motion must be denied.

## I. BACKGROUND

August 1, 2013 found several Savannah, Georgia police officers following a stolen vehicle along East 32nd Street. Presentence Investigation Report (PSR) ¶ 4. It stopped in front of 1104 East 32nd Street and the driver fled. *Id.* While looking for the driver, officers knocked on the door of 1102 East 33rd Street. *Id.* That's when Rivers and several other males jumped (some fell) from a window of that home

and ran away. *Id.* Hot pursuit ensued, during which Rivers ditched a .40 caliber handgun. PSR ¶ 5. Unsurprisingly, his escape attempt failed. PSR ¶ 6. A search incident to his arrest recovered $2,430 from Rivers (an unemployed high school dropout) as well as three cellphones. *Id.*

Given its disgorgement of armed young men at the sight of police, officers obtained a search warrant for 1102 East 33rd Street. PSR ¶ 7. The home, although lacking much furniture or food, contained a loaded 9 mm handgun near the window from which Rivers jumped; a gun on a bathroom floor; another gun in the kitchen on a table; and a digital scale and 3.6 grams of cocaine on the kitchen counter. *Id.* Digging deeper, police also found a bullet proof vest, three assault style rifles, and three loaded large capacity ammunition magazines stuffed within an air conditioning vent, as well as surveillance style photos of local law enforcement. PSR ¶ 8; doc. 38 at 8. Later investigation revealed that the home's lessee paid $725 per month in rent, and, in turn, sub-leased the home for double that. *Id.* at ¶ 9.

Little more than a month after being indicted, Rivers agreed to plead guilty to one felon-in-possession count pursuant to an agreement that contained no appeal or collateral attack waivers. Doc. 27 at 7.

Before sentencing, the U.S. Probation office prepared the PSR, which set a total offense level[1] of 23, including a four point increase for possession of a firearm in connection with another felony. PSR ¶ 18. Rivers objected to the PSR's finding that he was a member of a gang (PSR Addendum), but withdrew that objection at sentencing. Doc. 38 at 5-6. The Court adopted the PSR's factual findings and Guidelines calculations and sentenced Rivers to 78 months' imprisonment. *Id.* at 6; doc. 28. He never appealed, but timely filed the present motion. Doc. 34.

Rivers plies only one claim: that his attorney, Tina Hesse, provided ineffective assistance by failing to object to the four level Guidelines enhancement for possessing a firearm in connection with another felony.[2] Doc. 34 at 5. Focusing on "the *user* quantity of cocaine found in

---

[1] The United States Sentencing Guidelines calculate recommended sentences by comparing a person's "total offense level" -- which accounts for various characteristics of the crime committed -- and their criminal history score.

[2] To prevail on this claim, Rivers:

> must show 'that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant.' *Hollis v. Sec'y, Fla. Dep't of Corr.*, 2015 WL 5847258 at * 1 (11th Cir. Oct. 8, 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). '[P]erformance is deficient when it falls below an objective standard of reasonableness' and is 'outside the wide range of professionally competent assistance.' *Id.* And prejudice occurs if 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Id.*

3

plain view," Rivers contends that U.S.S.G. § 2K2.1 required the Government to show that his gun possession had the potential to facilitate *possession* of the drugs. Doc. 34 at 7 (emphasis added). Because a preponderance of the evidence "merely established that Mr. Rivers was present at th[e] house," but not "connect[ed] . . . to [its] operations" (doc. 43 at 5), the sentencing enhancement was, in Rivers' view, improper and Hesse's failure to object therefore ineffective assistance. Doc. 34 at 7.

## II. ANALYSIS

### A. Procedural Default

As mentioned above, Rivers never raised his claim on direct appeal (he never appealed, period). And "'[a] § 2255 motion, it must be remembered, may not be used as a 'surrogate' for a missed direct appeal.' *Jones v. United States*, 2015 WL 464243 at * 1 (S.D. Ga. Jan. 28, 2015) (citing *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004)); *see Stone v. Powell*, 428 U.S. 465, 478 n. 10 (1976) (28 U.S.C. § 2255 will not be allowed to do service for an appeal). "Under the procedural default rule, a defendant generally must advance an available challenge to a

---

*Murray v. United States*, 2015 WL 7069345 at * 2 (S.D. Ga. Nov. 12, 2015).

criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011).

A procedural default may be overcome if the movant can show "cause excusing his failure to raise the issue previously and prejudice from the alleged error." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). Ineffective assistance of counsel (IAC) can constitute cause. *Id.* As discussed below, however, Hesse provided competent representation. Rivers' failure to raise his sentencing enhancement claim on direct appeal thus bars its consideration in this case.

### B. The 2K2.1(b)(6)(B) Enhancement and Ineffective Assistance

Even if no procedural bar existed, Rivers IAC/sentencing enhancement claim still fails. If a defendant "[u]sed or possessed any firearm . . . *in connection with* another felony offense," § 2K2.1(b)(6)(B) mandates a four point increase in the Guidelines sentence base offense level. U.S.S.G. § 2K2.1(b)(6)(B) (emphasis added). "Subsection[] (b)(6)(B) . . . appl[ies] if the firearm . . . facilitated, or had the potential of facilitating, another felony offense. . . ." *Id.* at cmt. 14(A). "Another felony offense" in turn "'means any federal, state, or local offense,'

punishable by imprisonment for a term exceeding one year, 'regardless of whether a criminal charge was brought, or a conviction obtained.' U.S.S.G. § 2K2.1, cmt. 14(C)." *United States v. Sanchez-Ruiz*, 618 F. App'x 638, 642 (11th Cir. 2015).

In past cases, the Eleventh Circuit has construed "in connection with" broadly and found that "[a] firearm found in close proximity to drugs or drug-related items 'has' -- without any requirement for additional evidence -- the potential to facilitate the drug offense." *Id.* (quoting *United States v. Carillo-Ayala*, 713 F.3d 82, 92 (11th Cir. 2013). Critically, actual facilitation need not be shown. *See United States v. Rhind*, 289 F.3d 690, 695 (11th Cir. 2002) ("[D]efendants possessed . . . firearms 'in connection with'" counterfeiting charge by using a vehicle that contained disassembled guns during commission of the offense).

Comparison of the phrase "in *connection* with" to its cousin -- "in *furtherance* of" -- illustrates well the relationship between a gun and an underlying drug felony necessary for a § 2K2.1(b)(6)(B) enhancement. "'[T]he presence of a gun within the defendant's dominion and control during a drug trafficking offense is not sufficient by itself" to show possession in furtherance, [*United States v.*] *Timmons*, 283 F.3d [1246,]

1253 [(11th Cir. 2002)], that is, to show the firearm 'was possessed to advance or promote the commission of the underlying offense,' *id.* at 1252 (discussing H.R. Rep. 105–344 at 12 (1997) (explaining amendment of 18 U.S.C. § 924(c) in light of *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995))). But the presence of a gun within a defendant's dominion and control during a drug trafficking offense ordinarily will suffice to show possession during and in relation to the offense and, therefore, that the defendant possessed the firearm in connection with the offense." *Carillo-Ayala*, 713 F.3d at 96; *see also id.* ("A 'connection' is shown by *less* evidentiary proof than is required to show possession 'in furtherance of' a drug offense.").

Rivers notes that he "was not charged with drug trafficking, and [that] . . . there is no evidence of drug trafficking . . . considering the user quantity of cocaine and the lack of any evidence of distribution" in arguing that the above standard does not apply. Doc. 34 at 8. Mere "close proximity" (U.S.S.G. § 2K2.1(b)(6)(B), cmt. 14(B)) of a gun to drugs thus, to him, does not suffice to show the requisite connection. Doc. 34 at 8. Instead, he insists that the Government must prove by a

7

preponderance that his weapon "had the potential to facilitate" (U.S.S.G. § 2K2.1(b)(6)(B), cmt. 14(A)) simple possession of cocaine. Doc. 34 at 9.

The PSR never mentions whether it considered possession or trafficking the "other felony offense" for purposes of Rivers' 2K2.1(b)(6)(B) enhancement. PSR ¶ 18 ("Pursuant to USSG 2K2.1(b)(6)(B), as firearms were possessed in connection with another felony offense, the offense level is increased by four levels."). At sentencing, however, the district judge made clear that drug transactions,[3] not possession, undergirded the enhancement. *See* doc. 38 at 11 ("So the enhancement was because of the fact that during the . . . drug transaction . . . and because of the cash money that he had on him

---

[3] "Transaction" and "trafficking" are two different words and in some legal contexts trafficking connotes something greater than sales and distribution. *Compare, e.g.*, O.C.G.A. § 16-13-30(b) (prohibiting possession with intent to distribute of any controlled substance), *with* O.C.G.A. § 16-13-31 (creating a separate offense for trafficking, broadly defined as possessing larger than typical quantities of cocaine, opioids, marijuana, and methamphetamine). But for purposes of § 2K2.1, "trafficking" refers simply to selling drugs. *See United States v. Matthews*, 749 F.3d 99, 106 (1st Cir. 2014) (using "dealing" and "trafficking" interchangeably during 2K2.1(b)(6)(B) analysis); *United States v. Cannon*, 589 F.3d 514, 519 (1st Cir. 2009) (record supported inference that defendant "possessed a loaded gun knowing that there were drugs in the SUV which were intended for sale," and thus his possession "was . . . connect[ed] with" a drug trafficking felony); *see also United States v. LePage*, 477 F.3d 485, 489 (7th Cir. 2007) (defendant's prior sale of drugs "consistent with an inference that he is a trafficker"); *United States v. Richardson*, 510 F.3d 622, 628 (6th Cir. 2007) (defendant "had two prior convictions for possession with intent to distribute controlled substances" and thus "had an established knowledge [of] . . . drug trafficking activity" which supported inference that defendant possessed gun "in connection with" drugs found in close proximity).

and also because of him fleeing from the police, which is that -- you know, armed with a firearm that he got the -- that he got the enhancement for that."). "[C]lose proximity to drugs or drug-related items," then, suffices to show the connection 2K2.1(b)(6)(B) requires. *Carillo-Ayala*, 713 F.3d at 92.

That being the case, the Government easily met its preponderance burden and demonstrated that Rivers' gun possession was "in connection with" another, drug trafficking, offense. In addition to actual cocaine, police found digital scales and a veritable arsenal in the home from which Rivers fled. PSR ¶¶ 7-8. When viewed in light of the home having no furniture or food (not to mention its tenant sub-leasing the property for double her lease payment), PSR ¶ 7, that paraphernalia and weaponry justify an inference that the home, and thus those in it, supported drug dealing. *See Sanchez-Ruiz*, 618 F. App'x at 642 (drug ledger and other drug paraphernalia, even in the absence of any actual drugs, supported finding that defendant possessed gun "in connection with" a trafficking offense). The large amount of cash and three cell phones[4] found on

---

[4] In this age of "smart" phones and widespread knowledge of government electronic surveillance capabilities, criminals seeking to keep their communications from police often use cheap, pre-paid "burner" cell phones that they dispose of after limited use. *See United States v. Surtain*, 519 F. App'x 266, 276 (5th Cir. 2013) (discussing

Rivers (PSR ¶ 6) -- who, again, has essentially been unemployed his entire life (Doc. 38 at 9 ("The cash was presumably the proceeds of drug sales since this defendant has worked a legitimate job for less than 2 months of his entire life.")) -- and his past involvement in drug trafficking activities (PSR ¶ 31; doc. 38 at 7) further reinforces that conclusion. *See Matthews*, 749 F.3d at 106 (That "a jobless Matthews," a defendant with "a history as a drug trafficker" had "over $5,000 on him . . . helps justify an inference that [he] . . . engaged in the sale, rather than the casual use, of drugs"). Together, those pieces of evidence debunk any notion that the 3.6 grams of cocaine found in the home existed for use only, and easily satisfy the Government's preponderance burden for justifying an "in connection with" enhancement. PSR ¶ 7.

Hesse's failure to raise the issue, then, cannot constitute ineffective assistance. *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] failure to preserve a meritless issue plainly cannot prejudice a client."), quoted in *Murray*, 2015 WL 7069345 at * 3, *adopted*, 2016 WL 224132 (S.D. Ga. Jan. 19, 2016). Even if an argument against the enhancement isn't frivolous, Rivers still cannot show that Hesse

---

conspiracy member's call to a co-conspirator's "burner cell phone, which had been used only in connection with criminal activity").

deficiently performed by failing to press it at sentencing. Defendants are entitled to competent representation -- not the world's savviest legal mind. *Hollis*, 2015 WL 5847258 at * 1 ("'[P]erformance is deficient when it falls below an objective standard of reasonableness' and is 'outside the wide range of professionally competent assistance.'"). Even if ultimately incorrect, Hesse's decision that Rivers' enhancement was legally justified falls well within that range.

### III. CONCLUSION

Accordingly, Jacorey Rivers' § 2255 motion should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1–2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA–worthy issues at this stage of the litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1), (2); Rule 11(a) of the Rules Governing Section 2254 Cases ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (emphasis added). Any motion for leave to appeal *in forma pauperis* therefore is moot.

**SO REPORTED AND RECOMMENDED**, this  9th  day of May, 2016.

_/s/ G. R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA